IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER OJI | : | CIVIL ACTION |
| | : | NO. 14-7323 |
| v. | : | |
| | : | |
| DEVEREUX FOUNDATION | : | |

O'NEILL, J.                                                                                                                  January 23, 2017

### MEMORANDUM

Plaintiff Christopher Oji brings claims against his former employer defendant Devereux Foundation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. § 951 *et seq.*, alleging that defendant discriminated and retaliated against him and failed to accommodate his injuries—a shoulder sprain and fractured finger. I have before me defendant's motion for summary judgment on all claims, Dkt. No. 32, plaintiff's response, Dkt. No. 41, defendant's reply, Dkt. No. 43, and plaintiff's appendix to his response, Dkt. No. 44, which he filed late.[1] Because I find that plaintiff has not offered sufficient evidence for a reasonable jury to find in his favor on any of his claims, I will grant defendant's motion for summary judgment.

### BACKGROUND[2]

**I.     Plaintiff's Employment**

Defendant is a nonprofit provider of behavioral healthcare that offers services to people with special needs. Dkt. No. 32, Ex. 2 (Devereux's Philosophy of Care) at 136, Ex. 3 (Devereux

---

[1] Plaintiff filed his appendix on December 9, 2016, more than two weeks after filing his response brief and in violation of this Court's Order that plaintiff file his response on or before November 23, 2016. Dkt. No. 41. As a result, defendant had to reply without the benefit of plaintiff's exhibits. See Dkt. No. 43 at p. 1 n.2.

[2] The following facts are largely drawn from defendant's statement of facts. Def.'s Mem. 2–14. Plaintiff declined to provide his own statement of facts, instead incorporating defendant's

Handbook) at 3.  Plaintiff worked in one of defendant's residential treatment programs, a 20-bed residential facility for children and adolescents who have both behavioral problems and intellectual or developmental disabilities.  Dkt. No. 32, Ex. 2 at 138.  Many of the residents at the facility have autism, Asperger's syndrome or pervasive developmental disorder.  Id.

As a Direct Support Provider (DSP), plaintiff was responsible for ensuring the safety of himself and others and planning and implementing recreation and other social activities for residents.  Dkt. No. 32, Ex. 12 (Prof. Skill Area/Description, Direct Support Professional), 4 ¶ 3; Dkt. No. 32, Ex. 1 (Oji Dep.) at 91:24–92:17.  His responsibilities included helping residents eat, shower and dress, as well as physically restraining clients when they posed a danger to themselves or others.  Oji Dep. at 81:14–16; 89:22–91:3; 118:14–15.

## II.     Plaintiff's Injuries

On May 21, 2012, plaintiff sprained his shoulder while working with a client.  Oji Dep. at 112:25–113:15.  He was evaluated by a Worker's Compensation provider, who restrained his left arm and advised him to avoid overhead reaching or lifting.  Dkt. No. 32, Ex. 16 (Worker's Comp. Medical Report, May 29, 2012).  Jennifer Scott, a Human Resources generalist at Devereux who managed plaintiff's case, notified defendant about plaintiff's restrictions.  Dkt. No. 32, Ex. 18 (Email from Scott to Alleman, May 29, 2012).  Plaintiff resumed work the day after the evaluation and, that day, he slipped while cleaning the shower at the treatment facility, fracturing the fourth finger on his right hand.  Oji Dep. at 116:13–117:6; Dkt. No. 32, Ex. 23

---

version "as well as the documents and testimony contained in Plaintiff's Appendix."  Pl.'s Mem. at ECF p. 2.  On summary judgment, I am not obligated to review plaintiff's appendix—approximately 900 pages of exhibits—without the benefit of plaintiff's citations or synthesis.  See Fed. R. Civ. P. 56(c)(2) ("The court need consider only the cited materials . . . ."); see also Doebler's Pa. Hybrid, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record.") (internal quotation marks and citations omitted).

(Letter from Dr. Lyons to Dr. Krch, June 4, 2012).  On June 1, he was evaluated by another Worker's Compensation physician, who referred him to an orthopedist.  Dkt. No. 32, Ex. 22 (Worker's Comp. Medical Report, June 1, 2012); Dkt. No. 44, Ex. 1 pt. 5 (Referral Note, June 1, 2012) 7.  The orthopedist determined he should not interact with clients, reach with his left arm, or lift or carry more than ten pounds because of his shoulder injury.  Dkt. No. 44, Ex. 1 (Worker's Comp. Medical Report, June 7, 2012) 25–26.  Plaintiff's right hand was in a cast from June 4 to July 9.  Dkt. No. 32, Ex. 29 (Adv. Orthopaedic Assoc. June 7, 2012 and Jul. 9, 2012 Chart Notes).

From June 4 to August 1, defendant placed plaintiff in a modified duty position where he did office work.  Oji Dep. at 127:13–19; Dkt. No. 32, Ex. 18 (Email Exchange Regarding Plaintiff's Modified Status, May 29–June 8, 2012), Ex. 26 (Letter to Plaintiff from Scott Regarding Modified Duty, June 7, 2012), Ex. 27 (Letter from Scott to Oji, June 18, 2012).  This work included lifting boxes and papers, "sweeping the floor, [and] writing."  Oji Dep. at 127:17–18; 128:1.

On August 1, after two months of modified duty, plaintiff's physicians released him to return to his former work obligations.  Dkt. No. 32, Ex. 33 (Advanced Orthopaedic Assoc. Aug. 1, 2012 Chart Note).  Plaintiff's medical records state that, as of August 1, he had "full range of motion" and "X-rays show continued acceptable alignment of the fracture fragments and some early callus formation" leading the physician to conclude that "at this point the fracture is healed" and he "would not be inclined to undertake [any] type of surgery to try to correct the minor cosmetic" problem with plaintiff's knuckle.  Id.  The physician concluded that plaintiff "can return to full work activities and we will see how he progresses."  Id.

However, plaintiff testified that, after he resumed his full responsibilities, he "struggled with [the DSP job obligations] because [he] was still injured and [he] had not recovered." Oji Dep. at 129:11–16. At his August 1 doctor's appointment, his physician wrote that he "still has some complaints of pain in the right hand" and that "it feels tight to him," and prescribed hand therapy. Advanced Orthopaedic Assoc. Aug. 1, 2012 Chart Note. Plaintiff told his caseworker this and she replied that he should make a follow-up appointment with his doctor. Dkt. No. 32, Ex. 51 (Email from Oji to Scott, Aug. 22, 2012) (Oji stating, "I don't know why Dr. Lyons will tell you that my hand injury has completely healed . . . . The objective is to get my hand to the condition that it was prior to the injury"); Dkt. No. 32, Ex. 19 (Scott Dep.) at 48:14–22.

Plaintiff claims that he requested accommodations from defendant both during the period of his restricted duty and after. Oji Dep. at 119:21–120:4, 128:13–16, 134:12–135:13. During his period of modified duty, he requested he be able to clock in and out in a place away from clients. Dkt. No. 32, Ex. 15 (Gonzalez Dep.) at 64:9–20; Oji Dep. at 382:19–383:7. Defendant moved the place he clocked in, but there were often clients present at the new location. Id. Plaintiff also requested defendant provide him a driver to take him to and from work, but defendant declined to do so. Oji Dep. at 120:8–17, 121:17–24.

Plaintiff alleges that, on September 12, 2012, he notified defendant's Operational Manager, Donna Gonzalez, that he would be out of work for surgery on his hand beginning on October 5. Compl. ¶ 25.[3] Gonzalez denies that he told her this. Dkt. No. 44, Ex. 4, (Gonzalez Dep.) at 44:2–46:22 ("Chris never told me he was having surgery ever.").

---

[3] Plaintiff does not cite to the record to support this claim in his memorandum in opposition to summary judgment. In my own review of the record, I was not able to find any support for this account.

### III. Plaintiff's Misconduct

Plaintiff violated Devereux policy on September 7, 2012, by leaving his shift before his replacement arrived. Oji Dep. at 170:8–18; Dkt. No. 32, Ex. 2 (Devereux's Philosophy of Care). On that night, plaintiff and his coworker, Tristan Jones, were on duty until 10:00 pm. Oji Dep. at 170:8–10; Dkt. No. 32, Ex. 41 (Houser Dep.) at 18:16–24. Shortly before their shifts ended, plaintiff's coworkers called their supervisor to ask if a replacement staff member was soon to arrive. Oji Dep. at 43:6–45:23; Houser Dep. at 19:13–20:5. The supervisor stated the replacement was on his way and hung up. Houser Dep. at 20:3–5. After waiting five minutes past the end of his shift, plaintiff asked the DSP in the other wing of the facility to look after his clients and he and Jones left. Oji Dep. at 170:8–18; Dkt. No. 32, Ex. 42 (Timecard of Christopher Oji). As a result of plaintiff's and Jones's departure, the clients on their wing were left unattended for almost two hours. Dkt. No. 32, Ex. 37 (Termination Letter from Vincent to Oji, Sept. 18, 2012). This violated Devereux policy, which authorizes termination for such misconduct. Dkt. No. 32, Ex. 2 (Devereux's Philosophy of Care) ("Staff will not leave the clients they are supervising for any reason unless another staff member or supervisor relieves them. This would include change of shifts, bathroom breaks, or going to another unit or outside the unit.") (emphasis omitted); Ex. 3 (Devereux Employee Handbook) 53 (explaining that employees can be terminated for violating Devereux's policies).

On September 18, 2012, following an internal investigation into the incident, defendant fired plaintiff, stating in his termination letter that by leaving his shift without being replaced by another staff member he "demonstrated a clear disregard to the students to whom we provide care." Termination Letter from Vincent to Oji, Sept. 18, 2012. Defendant also fired plaintiff's

5

coworker, Tristan Jones.  Dkt. No. 32, Ex. 38 (Vincent Dep.) at 13:6–16; Ex. 39 (Latella Dep.) at 24:13–22.

### IV.     Post-Termination Medical Condition

After his termination, plaintiff continued to receive medical treatment for his injuries. Dkt. No. 44, Ex. 10 (Worker's Compensation Appeal Board Decision, Dec. 14, 2015).  He applied for and received worker's compensation for the medical treatment necessary for his injuries.  Id.

He now seeks declaratory and injunctive relief, punitive damages, and compensation for loss in pay and emotional distress.  Compl. 9.  Discovery has concluded in this case, see Dkt. No. 26 (ordering all fact discovery due by August 1, 2016), and defendant has moved for summary judgment on all of plaintiff's claims.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. A fact is "material" if it might affect the outcome of the case under governing law.  Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

>   (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>   (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted). However, the adverse party must offer "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). "[T]he nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co., 24 F.3d 508, 511 (3d Cir. 1994).

## DISCUSSION

Plaintiff does not present sufficient evidence on summary judgment to support his ADA or PHRA claims. I analyze these claims together as the law is the same with respect to the issues relevant to this decision. See Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002) ("The PHRA and the ADA are basically the same . . . in relevant respects and Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts."). Even if plaintiff could show he was disabled under the ADA and PHRA,[4] his claims fail because: 1) he

---

[4] The ADA and PHRA have different standards for what counts as a "disability" in light of the ADA Amendments Act of 2008 and the EEOC's 2011 regulations. Pub. L. No. 110-325, 122 Stat. 3553, codified in various provisions of 42 U.S.C. §§ 12101 et seq.; Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, as

does not present evidence from which a reasonable jury could conclude he was qualified for his position with or without a reasonable accommodation, and thus his claim for failure to accommodate does not survive summary judgment; and 2) a reasonable jury could not infer discrimination or retaliation from the circumstances of his termination and thus defendant is entitled to summary judgment on his claim for retaliation.  For both of these reasons, plaintiff's disability discrimination claims also fail.  Therefore, I will grant defendant's motion for summary judgment on all claims.

**I.      Qualified With or Without a Reasonable Accommodation**

To survive summary judgment on his claims for failure to accommodate and disability discrimination, plaintiff must show that he was a "qualified individual"—i.e., that he was qualified to be a DSP with or without a reasonable accommodation.  See Buskirk, 307 F.3d at 166 (requiring a plaintiff claiming disability discrimination to show he was qualified for the position); 42 U.S.C. § 12112(b)(5)(A) (requiring a plaintiff claiming failure to accommodate to show that he was "otherwise qualified").  Because "employers have legitimate interests in performing the duties of their business adequately and efficiently," the ADA does not "obligate[] [them] to employ persons who are incapable of performing the necessary duties of the job." Shiring v. Runyon, 90 F.3d 827, 830–831 (3d Cir. 1996) (discussing an analogous provision in the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*.).  Thus, a "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds."  42 U.S.C. § 12111(8); Turner v. Hershey Chocolate USA, 440 F.3d 604, 610 (3d Cir. 2006) (holding that a plaintiff must show "that she

---

Amended, 76 Fed. Reg. 16978 (March 25, 2011), codified at 29 C.F.R. Part 1630.  Here, however, I will assume that plaintiff has a disability as defined under both statutes without deciding the question.

can perform the essential function of the job with reasonable accommodation and that the employer refused to make such an accommodation"). Under EEOC guidelines, a job function may be essential if "the reason the position exists is to perform that function." 29 C.F.R. 1630.2(n)(2)(i). "It is [the plaintiff's] burden to demonstrate that he is a qualified individual." Gera v. Cnty. of Schuylkill, 617 F. App'x 144, 146 (3d Cir. 2015).

The summary judgment record does not support plaintiff's contention that he could perform a DSP's essential functions with or without a reasonable accommodation. First, plaintiff does not present evidence showing either that client care is not an essential function of a DSP or that he was qualified to provide client care. Second, even if plaintiff could show that caring for clients was not an essential function of a DSP, plaintiff does not propose any reasonable accommodations that defendant could have made that would have allowed him to work as a DSP in any capacity.

### A. Not Qualified to Care for Clients

Plaintiff does not present evidence that could undermine defendant's showing that client care is an essential function of a DSP. Plaintiff testifies numerous times that a DSP's main responsibility is to keep clients safe. See Oji Dep. at 81:14–16 (responding to the question, "What does a direct support provider do?" by noting that there are "a lot of responsibilities" but mentioning only the responsibility to "take care of clients . . . The program requires restraining them when they're a danger to themselves or other people, doing their bodily checks"); id. at 89:22–91:3 (describing the requirement that DSPs be able to physically restrain clients); id. at 118:14–15 ("Part of my job duties is to shower the clients."); id. at 125:1–2 ("So you have to be physically fit to deal with this kind of job."). According to defendant's assessment form for DSP job performance, many, if not most, of the primary activities of a DSP involve client interaction.

Dkt. No. 32, Ex. 12 (Professional Skills of a Direct Support Professional, 2011–2012).  A competent DSP:

> [a]ssists individuals in the planning and implementation of daily activities . . . .  Accompanies individuals on community life outings . . . .  Performs assigned housekeeping and laundry duties.  Assists and instructs individuals in meal preparation and clean-up . . . .  Provides for the individuals' health and physical needs by supervising daily living activities such as personal hygiene, eating and dressing . . . .

Id.  Substantial, undisputed evidence on the record supports defendant's contention that client care is an essential function of a DSP.

Despite his own testimony, plaintiff argues that client care is not an essential function of the DSP position, identifying testimony from Scott describing possible accommodations for DSPs.  Scott Dep. at 23:13–24:3 ("A: So if you had a restriction of no client contact as a DSP, likely you would do clerical work . . . .  Q: But that job would still be considered a DSP position?  A: Yes.").  But in the context of Scott's overall testimony, it is clear that she was referring to temporary accommodations for DSPs who were required to refrain from client contact.  As she testified later, no DSP would be permanently assigned to work without client contact; rather, direct client contact was "one of the primary functions in that role."  Scott Dep. at 53:17–19.

Plaintiff has not put forth sufficient evidence to show that he could care for clients at the time he was terminated, with or without a reasonable accommodation.  The only record evidence relating to his performance upon returning to work in August 2012 is his own repeated testimony that he was not physically fit for the job.  See Oji Dep. at 426:16–22 ("I was not physically fit to be on that unit."); id. at 514:9–10 ("[T]he bottom line is this:  I had no business being there."); id. at 519:11–12; id. at 527:21–528:1 ("I shouldn't even [have been] working there. . . . [T]hey

10

shouldn't have had me taking care of kids like that with those injuries."). Plaintiff presents no testimony that he performed his job competently or was otherwise qualified to care for clients.

Plaintiff argues that in his testimony about his job performance he was merely expressing difficulty performing his duties due to pain, not his lack of qualifications for the position. But even if this were true, plaintiff, not defendant, has the burden of presenting sufficient evidence that a jury could find in his favor on the element of qualification in order to overcome a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (holding the nonmovant must offer "more than a mere scintilla of evidence in its favor"); Yan v. Pa. State Univ., No. 10-212, 2012 U.S. Dist. LEXIS 108923, *39 (M.D. Pa. Aug. 3, 2012) (explaining that a plaintiff "may not simply rest on her laurels once litigation has progressed to the summary judgment phase"). Plaintiff has not presented any affirmative evidence of his qualifications to care for clients. Instead, plaintiff contends that defendant has not presented evidence that plaintiff's qualifications were lacking. Dkt. No. 42 (Pl.'s Mem. in Opp. to Summ. J.) at ECF p. 9 ("[T]here is no evidence whatsoever that Mr. Oji did not perform the essential functions of the Direct Support Provider position after he was returned to full duty on August 1, 2012."). But it is plaintiff's burden, not defendant's, to put forth affirmative evidence such that a reasonable jury could find in his favor. He has not done so.

### B. No Evidence that a Reasonable Accommodation Existed

Additionally, plaintiff does not show that a reasonable accommodations existed that would have allowed him to perform even a modified DSP position. Plaintiff claims that defendant failed to accommodate him because it failed to assign him to clerical duties on May 30, 2012 and again between August 1 and September 18, 2012. Pl.'s Br. 12–14. He also claims that the clerical duties to which he was assigned between June 4 and August 1, 2012 continually

violated his physical restrictions by requiring the use of his right hand.  Pl.'s Br. 12–13.  But plaintiff presents insufficient evidence for a reasonable jury to conclude that reasonable accommodations existed that could have met the needs of his medical restrictions while allowing him to work.

"'[R]easonable accommodation' may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . and other similar accommodations."  42 U.S.C. § 12111(9).  However, it is not a reasonable accommodation to ask the employer to create a new position.  Gera, 617 F. App'x at 146–47 ("[I]t is well-established that '[t]he ADA does not require an employer to create a new position . . . . [or] transform a temporary light duty position into a permanent position.'"), quoting Buskirk, 307 F.3d at 169.  The ADA "is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made."  Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997), quoting Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997).

Although the reasonableness of a proposed accommodation is a factual matter, the court should grant summary judgment where there is no legal basis for a reasonable jury to find for the non-movant.  See Miller v. Univ. of Pittsburgh Med. Ctr., 350 F. App'x 727, 729 (3d Cir. 2009) (affirming the district court's grant of summary judgment where the "[p]laintiff did not provide evidence of a reasonable accommodation that would enable her to perform [the] essential function" of her job); cf. Buskirk, 307 F.3d at 170–71 (acknowledging that "the question of whether a proposed accommodation is reasonable is a question of fact" but holding that judgment as a matter of law was appropriate where plaintiff's argument had a legally insufficient evidentiary basis).

Plaintiff does not present any evidence that he was qualified to work as a DSP with a reasonable accommodation. He testified that his medical restrictions prohibited him from handling clients, Oji Dep. at 118:19–23, driving to work, Oji Dep. at 120:8–17, writing, Oji Dep. 135:23–137:22, lifting things, Oji Dep. 132:12–133:9, and sweeping, Oji Dep. at 133:10–25. He could not shred paper because he had difficulty picking up the paper, setting it down, or moving it. Oji Dep. 158:6–11. His injuries prevented him from "grasping, gripping and using force with [his] right hand, and using strength or flexibility with [his] left shoulder." Oji Dep. 149:16–20, 211:13–212:13. Indeed, he testified that "these injuries affect . . . . Everything. It bothers me. It causes me pain. . . Everything." Oji Dep. 214:18–25.

Although he asserts that defendant should have accommodated all of his restrictions, Oji Dep. at 157:7–23, he does not present evidence that a reasonable accommodation existed that would have allowed him to work. Plaintiff merely argues his limitations were not accommodated without presenting evidence that a reasonable modification of his duties was possible. See Dkt. No. 42 at ECF p. 13 (arguing that defendant failed to accommodate plaintiff by assigning him "clerical duty jobs, writing assignments, and other duties that required repetitive use of his right hand"). Absent evidence showing that a reasonable accommodation would have allowed him to perform any functions of a DSP, a jury could not find in plaintiff's favor on this element.[5] Therefore, I will grant summary judgment for defendant on plaintiff's claims of disability discrimination and failure to accommodate.

---

[5] Defendant argues that plaintiff's claims for failure to accommodate on May 30 and between June 4 and August 1 have no legal foundation because the ADA does not permit recovery for physical injuries. Defendant is correct that the ADA does not permit such recovery because it is covered by Worker's Compensation, Aponik v. Verizon Pa. Inc., 106 F. Supp. 3d 619 (E.D. Pa. 2015), of which plaintiff here has availed himself. However, plaintiff's recovery of worker's compensation benefits does not entitle defendant to summary judgment because plaintiff seeks to recover for "mental anguish and emotional distress." Compl. 9; Aponik, 106

## II.     Inference of Discrimination or Retaliation

Plaintiff does not present evidence from which a reasonable jury could infer that he was fired because of either his disability or his request for leave for his hand surgery. To prevail on his disability discrimination claims, plaintiff must show defendant fired him because he was disabled. Buskirk, 307 F.3d at 166. To prevail on his retaliation claims, he must show he was fired because he requested leave, an ADA-protected activity. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997) (holding that a plaintiff must show that defendant took an adverse action against him because he engaged in an activity that is protected under the ADA); Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004) (holding that a request for medical leave is a protected activity under the ADA).

Both disability discrimination and retaliation claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green where, as here, plaintiff does not provide direct evidence of discriminatory motive for his termination. 411 U.S. 792 (1973); Hughes v. City of Bethlehem, 294 F. App'x 701, 705 (3d Cir. 2008) (analyzing both "discrimination and retaliation claims using the burden-shifting framework of McDonnell Douglas"), citing Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). Under this scheme: (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for

---

F.Supp. 3d 619, 625 (explaining that there is no "bar to [the plaintiff's] recovery for *emotional distress* under the ADA"). Therefore, I will decline to grant summary judgment for defendant on this ground.

discrimination.  Id. at 802.  First, I assume *arguendo* that plaintiff established a prima facie case of discrimination and retaliation.

Second, to meets its burden of demonstrating a legitimate justification for the discharge, defendant must introduce "evidence [that], taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994), citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).  Defendant meets its burden by presenting evidence that plaintiff left disabled residents unattended in contravention of defendant's policy.  Oji Dep. at 170:8–18; Termination Letter from Vincent to Oji, Sept. 18, 2012.  Defendant further shows that plaintiff's coworker Tristan Jones, who left the facility with him before replacement staff arrived and who was not disabled, was also fired.  Vincent Dep. at 13:6–16; Latella Dep. at 24:13–22.  Thus, defendant has satisfied its burden of showing the existence of a nondiscriminatory reason for plaintiff's discharge and the burden shifts to plaintiff.  "Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff."  Fuentes, 32 F.3d at 763.

So then, third, plaintiff "must . . . show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)."  Id. "To show pretext, the plaintiff must present 'some evidence . . . from which a factfinder could reasonably either [ ] disbelieve the employer's articulated legitimate reasons; or [ ] believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  Id. at 764–65.  Plaintiff must present evidence such that "a reasonable factfinder could rationally find [defendant's reasons] 'unworthy of credence' and hence infer that the employer was not actually motivated by its proffered nondiscriminatory

15

reason." Id. at 765, citing Ezold v. Wolf, Block, Shorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992). Such a showing can be made by presenting evidence of temporal proximity between the protected activity and the adverse action. Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004). Discriminatory motive can also be shown by presenting evidence that defendant "has treated more favorably similarly situated persons not within the protected class." Parker v. Verizon Pa., Inc., 309 F. App'x 551, 556-557 (3d Cir. 2009). Finally, a determination of discrimination will "depend on the totality of the circumstances, as . . . a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." Moore v. City of Phila., 461 F.3d 331 (3d Cir. 2006) (internal quotation marks, citations, and alterations omitted).

Plaintiff's temporal proximity argument lacks support in the record. He argues that the proximity between the date he allegedly gave defendant's employee, Donna Gonzalez, documents showing that he was to have hand surgery on October 5 (Compl. ¶ 25), and the date he was terminated, six days later, suggests retaliation. But there is no evidence that he gave any documents to Gonzalez on October 5, and to survive summary judgment, plaintiff cannot rely on allegations in the pleadings; rather, he must refer to evidence. Pastore v. Bell Tel. Co., 24 F.3d 508, 511 (3d Cir. 1994). In addition to plaintiff's problematic reliance on the allegation in his complaint, he does not present any evidence that the decisionmakers who terminated him—who did not include Gonzalez—knew about his scheduled hand surgery. Indeed, the decisionmakers deny any knowledge. Vincent Dep. at 6:18–21, 13:9–16; Latella Dep. at 22:9–20, 54:20–55:3; Ex. 55 (Vincent Decl.) ¶ 3. Plaintiff does not even present circumstantial evidence suggesting they were told of his plans. Although I draw all inferences in plaintiff's favor, his mere

16

suspicion that they had this knowledge, without evidence, cannot serve as the basis for denial of summary judgment. Williams, 891 F.2d at 460.

Plaintiff's argument that defendant treated similarly situated individuals more favorably is also unsubstantiated. Plaintiff does not provide names, dates or other identifying characteristics to support his contention that other DSPs left clients unattended but were not terminated.[6] The only specific comparator evidence he identifies is a September 10, 2012 email from Edward Vincent, defendant's residential program director, describing plaintiff's conduct as "another case of several staff leaving kids unsupervised or leaving the unit without supervisors['] approval or coverage." Dkt. No. 32, Ex. 56. However, this email does not support plaintiff's claim because Vincent testified that he was referring to two distinct categories of conduct— leaving clients "[u]nsupervised can be the instance where a staff will leave and go to the bathroom without securing coverage," whereas leaving a client "[u]nattended would be somebody leaving with no intent to come back to provide coverage for that particular time of their shift . . . ." Vincent Dep. at 16:15–17:2. Vincent explained that he "wasn't aware of any instance where staff left . . . the kids unattended in the unit and went home" prior to plaintiff and Jones doing so. Vincent Dep. at 17:19–22. Similarly, neither Richard Latella, a human resources director at Devereux, nor Rodney Alleman, a treatment manager supervisor at Devereux, identified any instances where behavior like plaintiff's went undisciplined. Latella Dep. at 71:23–77:9; Dkt. No. 32, Ex. 40 (Alleman Dep.) 24:2–25:26:19. Thus, plaintiff does not present evidence that similarly situated individuals were treated differently.

---

[6] As evidence, plaintiff points to his response to one of defendant's interrogatories asking him a similar question in which he cites transcripts and evidence provided in his workers' compensation case. See Dkt. No. 44, Ex. 12 at ECF p. 3. However, because that evidence is not in the record before me, I cannot consider it.

Plaintiff's other evidence also does not support a finding that his employer's nondiscriminatory reason for his termination was pretextual. First, plaintiff argues Tristan Jones' firing does not show that defendant acted impartially toward plaintiff because Tristan Jones had a disciplinary history while plaintiff did not. Pl.'s Br. 9–10, citing Dkt. No. 44, Ex. 8 (Unemployment Compensation Board of Review, Hearing Transcript, Oct. 31, 2012), 11. However, the evidence that plaintiff cites for this contention shows that plaintiff did have a disciplinary record. See Unemployment Compensation Board of Review, Hearing Transcript, Oct. 31, 2012, 11 ("The other individual [who left his shift on Sept. 7] had significant issues of discipline as did Mr. Oji.") (emphasis added); id. at 12 ("Mr. Oji had a significant history of record violations and it was determined that through the progressive discipline ladder, the next step was termination.").

Second, he argues defendant did not accommodate his requests for modified duties in light of his injuries. As described above in Part I, plaintiff does not present evidence that he proposed any reasonable accommodations that could have made it possible for him to work for defendant while implementing his medical restrictions.[7]

Plaintiff's failure to present sufficient evidence for a reasonable jury to conclude that defendant discriminated or retaliated against him because of his disability requires me to grant defendant's motion for summary judgment on his ADA and PHRA claims for retaliation. For

---

[7] While plaintiff's discrimination and retaliation argument centers on his termination, he also briefly mentions defendant's refusal to pay him referral fees. In support, plaintiff states, without citing to the record, that Ms. Dawson told him "he did not deserve the fee because he was not productive for defendant." Dkt. No. 42 at ECF p. 10. Plaintiff's only citation to support this contention is to Dawson's testimony that she did not say such a thing. As plaintiff identifies no record evidence suggesting defendant denied plaintiff referral fees because of his disability, I cannot find this to be a dispute of material fact for the purposes of summary judgment.

18

the same reason, and because of the lack of evidence showing his qualifications, I must grant of summary judgment on his disability discrimination claims as well.

An appropriate Order follows.